**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

110 SUNPORT LLC, a New Mexico Limited
Liability Company, *individually and on behalf
of all others similarly situated*,

                Plaintiff,

v.

                             Case No.: 1:21-cv-00844

HOLIDAY HOSPITALITY FRANCHISING,
LLC and SIX CONTINENTS HOTELS, INC.
d/b/a INTERCONTINENTAL HOTELS
GROUP,

                Defendants.

## <u>COMPLAINT</u>

    **COMES NOW**, Plaintiff 110 SUNPORT LLC, a New Mexico Limited Liability Company,

individually and on behalf of all others similarly situated, and brings this class action lawsuit

against Holiday Hospitality Franchising, LLC and Six Continents Hotels, Inc. d/b/a

Intercontinental Hotels Group alleging as follows upon personal knowledge as to itself and its own

acts and experience and as to all other matters upon information and belief, including investigation

conducted by its attorneys.

## <u>INTRODUCTION</u>

    1.     Defendant Six Continents Hotels, Inc. ("SCH") is the world's largest hotel

company by room count, and does business under the name InterContinental Hotels Group

("IHG") (SCH and IHG may hereinafter be collectively referred to as "IHG").

    2.     IHG operates approximately some 5,600 hotels across more than 15 brands.  IHG

takes an asset-light approach, owning, franchising and/or managing hotels for third parties, with

Holiday Inn as its mainstay chain, under such brands as Holiday Inn, Holiday Inn Express and Holiday Inn Resorts (collectively, the "Holiday Inn Brands"), each bearing the identification as "an IHG Hotel."

3. IHG also owns, manages and/or franchises other hotel brands such as Crowne Plaza, InterContinental, Staybridge Suites, Candlewood Suites, Hotel Indigo, Regent and Kimpton.

4. IHG's Holiday Inn Brands account for approximately 70% of its total hotel count.

5. IHG owns Defendant Holiday Hospitality Franchising, LLC ("HHF"), its affiliate which markets, offers and sells Holiday Inn Brand franchises including, but not limited to, Holiday Inn, Holiday Inn Express and Holiday Inn Resort.

6. Defendant IHG owns and acts through its franchising affiliate, HHF and its agent and representative IHG Owners Association, Inc. ("IHGOA").

7. HHF enters into standardized franchise agreements (collectively, the "License Agreements") with its franchisees.

8. Plaintiff 110 SUNPORT LLC, a New Mexico Limited Liability Company, is a franchisee that owns and operates a hotel located at 1921 Yale Boulevard SE in Albuquerque, New Mexico 87106 (the "Hotel"), that bears an HHF brand mark pursuant to a License Agreement.

9. Many HHF franchisees are individuals, single member limited liability companies or closely held corporations who are either immigrants or second-generation Americans of Indian or other South Asian origin.

10. Plaintiff is one such HHF franchisee.

11. The hotel franchise industry holds particular appeal and attraction to these franchisees by providing investment and traditional family business ownership opportunities

which they can build through diligence, dedication and hard work.

12.     This class action lawsuit seeks to put an end to IHG/HHF's unlawful, abusive, fraudulent, anticompetitive and unconscionable practices designed solely to benefit and to enrich IHG/HHF's shareholders and to do so at the expense and to the detriment of Plaintiff 110 Sunport, LLC and similarly situated franchisees , namely, similarly situated HHF franchisees in the State of New Mexico.

13.     At the heart of IHG/HHF's unlawful scheme is its requirement that its franchisees use certain mandated vendors and suppliers for the purchase of virtually all goods and services necessary to maintain and to operate a hotel.

14.     IHG/HHF's forced exclusive use of certain chosen vendors and suppliers imposes well above-market procurement costs on its franchisees which include, but are not limited to, those associated with its onerous and exorbitant Property Improvement Plan ("PIP").

15.     One such PIP is "Formula Blue," which IHG launched in 2014 for the Holiday Inn Express brand. The "Formula Blue" prototype renovation requires certain, among other things, upgrades to the exterior of the hotels, as well as other minor site and structure updates.

16.     Plaintiff recently completed a Formula Blue renovation for its Hotel in Alburquerque.

17.     Under the guise of improving the franchisees' hotels to maintain "brand standards," IHG/HHF forces its franchisees to frequently undertake expensive renovations, remodeling and construction as part of a PIP.

18.     And, in so doing, IHG/HHF manipulates and shortens the warranty periods on mandated products the franchisees must purchase, then disingenuously uses this to justify PIP requirements as purportedly necessary to meet "brand standards" when, in reality, IHG/HHF's

3

sole purpose is to maximize its kickbacks and unjustifiably run up costs and fees on their franchisees in bad faith.

19.     IHG/HHF deceitfully represent to their franchisees that they select vendors with the laudable goal of using the franchisees' collective bargaining power to secure a group discount and to ensure adequate quality and supply of products and services, and refer to these procurement programs as the "IHG Marketplace."

20.     In fact, however, IHG/HHF's primary goal in negotiating with vendors has little to nothing to do with the best interests of its franchisees.  Rather, IHG/HHF's primary and overriding interest is to secure the largest possible profit and kickback (or "rebates") for itself, which the chosen vendors finance through the above-market rates charged to HHF franchisees in collusion with IHG/HHF.

21.     Furthermore, the above-market priced products which IHG/HHF forces franchisees to purchase through the IHG Marketplace (and related programs) is overwhelmingly of inferior quality.

22.     These low-quality "IHG Approved" purchases are forced upon franchisees and disingenuously characterized as meeting supposed brand standards of quality, when in truth the sole purpose is to maximize kickbacks for IHG/HHF and unjustifiably run up costs on their franchisees in bad faith.

23.     Upon information and good faith belief, IHG/HHF have each netted tens of millions of ill-gotten dollars as a result of illicit vendor supply arrangements.

24.     Additionally, IHG/HHF engages in other oppressive, bad-faith, fraudulent and unconscionable conduct as more fully described herein.  For instance, IHG holds itself out to the public as offering discounts, travel benefits and other perks to repeat guests through its IHG

4

Rewards Club loyalty program.

25.     IHG has a mobile booking app as well as cloud-based hotel solutions which it represents as driving demand for its hotel owners and which ostensibly allows hotel owners to reach potential guests at a lower cost.  Hotel guests can accumulate points per dollars spent which can be redeemed at IHG hotels.

26.     When those points are then redeemed at a hotel, however, only a small fraction of the value is reimbursed to franchisees while IHG/HHF requires that Plaintiff and franchisees (and *not* IHG/HHF) pay taxes on the full value of the product or service obtained by the redeeming hotel guests.

27.     Furthermore, in instances where hotel guests' accumulated reward points from stays at Plaintiff's (or other franchisees') hotel expire, the points never return to Plaintiff or to any source-of-origin franchisees.

28.     Whenever a guest calls IHG Guest Relations to complain about poor service, regardless of who is at fault, the hotel is penalized without appropriate investigations and charged case management fees of over $150, in addition to any other monetary reimbursements provided to the guest. In an attempt to appease guests, IHG Guest Relations representatives unjustly assess penalties to the hotels and rarely considers the franchisees' perspective, depriving franchisees the right to address and to remedy the situation with minimal loss.

29.     IHG/HHF also frequently introduces new marketing programs under the guise of providing franchisees with a "choice" as to whether they should participate or not.

30.     In reality, however, all such marketing programs are forced upon the franchisees insofar as any and all decisions to "opt out" are met with vindictive, punitive and retaliatory action by IHG/HHF.

5

31.     These programs are in addition to all marketing fees contracted and paid for by the franchisees further to the License Agreements, and serve as an additional revenue source by imposing additional fees and fines for the sole profit and benefit of IHG/HHF, and to do so without disclosure or agreement by deceit, implied threat and actual retribution rendering franchisees' supposed "opt-out" choice completely illusory.

32.     Furthermore, although the facts set forth herein predominantly existed before March 2020 and continuously thereafter, IHG/HHF has ceased all of its marketing since the imposition of Covid-19 related restrictions in early 2020 yet it has continued to collect marketing-related fees from Plaintiff 110 Sunport, LLC and similarly situated franchisees.

33.     That is, despite the fact that IHG/HHF has not been engaged in any marketing activities or efforts for approximately a year, it continues to require Plaintiff 110 Sunport, LLC and similarly situated franchisees to pay significant marketing related fees for which they receive nothing in return.

34.     Moreover, IHG/HHF routinely assesses additional fees and penalties against franchisees which are not authorized by the applicable License Agreement and are fundamentally excessive and unfair.   These fees and penalties are disingenuously assessed as a means to intimidate franchisees, including to serve as bad faith bases for default notices and threatened termination, as well as to harm the economic viability, profitability and creditworthiness of the targeted franchisees.

35.     For instance, IHG/HHF routinely requires its franchisees to pay multiple fees for the same product or service.  And, IHG/HHF routinely assesses additional fees against franchisees for services and products that IHG/HHF either does not, in fact, provide or provides at an inferior quality.

6

36.     IHG/HHF imposes requirements on its franchisees to undergo hotel inspections any time there are conversions, construction, changes in ownership, brand changes or re-licensing.  In conjunction with IHG/HHF's unilaterally imposed mandates for any such hotel changes, IHG/HHF requires its franchisees to pay for the inspections, IHG/HHF's written reports and any re-evaluations and re-inspections that IHG/HHF alone deems necessary.

37.     In practice, IHG/HHF stages these inspections to maximize criticism of franchisee hotels as a pretext for imposing additional inspections, reports and fines, all deliberately interposed for IHG/HHF's own financial benefit and to the detriment of franchisees.

38.     IHG/HHF arbitrarily imposes rules and regulations and/or unreasonably interprets rules and regulations in order to justify assessing monetary penalties against franchisees.

39.     Quite egregiously, IHG/HHF routinely discriminates, demeans and is both explicitly and implicitly hostile and bigoted towards Plaintiff and towards other Indian-American and South Asian-American franchisees.

40.     IHG/HHF corrupts its Owners Association, the IHGOA, the function of which IHG/HHF represents in the License Agreement is "to function in a manner consistent with the best interests of all persons using the System" but instead is staffed almost exclusively with IHG/HHF representatives to the exclusion of franchisees and operates to undermine and to harm the very hotel owners and franchisees it purports to represent.

41.     HHF's actions are unconscionable and outrageous, and have pushed franchisees to the financial breaking point.

42.     This class action lawsuit, brought by Plaintiff on behalf of itself and all similarly situated IHG/HHF franchisees in the State of New Mexico, seeks, monetary damages and other relief for breach of contract (COUNT I); violations of the New Mexico Unfair Practices Act,

NMSA1978, §§ 57-12-1, *et seq*. (COUNT II); violations of the Sherman Act, 15 U.S.C. § 1 and the New Mexico Antitrust Act, NMSA 1978, §§ 57-1-1 *et seq*. (COUNT IV), and also seeks declaratory judgment and injunctive relief (COUNT III) and an accounting (COUNT V).

## JURISDICTION AND VENUE

43.     This Court has subject matter jurisdiction over the federal law claims asserted in this class action lawsuit pursuant to pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the Sherman Act, 15 U.S.C. § 1.

44.     This Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 as the parties are from different states and the amount in controversy exceeds the sum of $75,000.00.

45.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed class; (b) some members of the proposed Class have a different citizenship from Defendants and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) & (6).

46.     Plaintiff 110 SUNPORT LLC, a New Mexico Limited Liability Company, is a franchisee that owns and operates a hotel, located at 1921 Yale Boulevard SE in Albuquerque, New Mexico 87106 (the "Hotel"), that bears a HHF brand mark pursuant to a License Agreement.

47.     Defendant HHF is a Delaware-registered limited liability company with its principal place of business located at Three Ravinia Drive, Suite 100 in Atlanta, Georgia 30346.

48.     Defendant IHG is a Delaware-registered corporation with its principal place of

business located at Three Ravinia Drive, Suite 100 in Atlanta, Georgia 30346.

49.     This Court has subject matter jurisdiction over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because they arise from the same set of operative facts as the federal law claims.

50.     This Court has personal jurisdiction over Defendants IHG and HHF because they regularly transact business within the geographic boundaries of this District by, *inter alia*, entering into franchising agreements with franchisees and engaging in routine, systematic and continuous contacts with franchisees in this District.

51.     Venue is proper in this judicial district pursuant to 18 U.S.C. §§ 1965(a) and (b) because Defendants HHF and IHG regularly transact business within the geographic boundaries of this District by, *inter alia*, entering into franchising agreements with franchisees, collecting membership fees from franchisees and otherwise conducting and transacting business with franchisees.  The business conducted by Plaintiff is pursuant to a certain license agreement with HHF, and Plaintiff's business location is in Alburquerque, New Mexico.  In short, the ends of justice require Defendants to be summoned to this District.

## **COMMON FACTUAL ALLEGATIONS**

52.     Plaintiff 110 Sunport, LLC hereby incorporates Paragraphs 1-51 of its Complaint as if stated fully herein.

**A.     The Parties' Relationship**

52.     IHG has been in operation since 2003.

53.     Throughout its history, IHG has created and acquired hotel brands, including, but not limited to, Holiday Inn, Holiday Inn Express and Holiday Inn Resort.

54.     IHG's franchising affiliate, HHF, licenses the right to use these hotel brand marks

to franchisees, including Plaintiff, by entering into franchise agreements with them, which in many cases are referred to as "License Agreements."

55.     IHG owns HHF and has developed relationships with various vendors and suppliers to IHG/HHF franchisees.

56.     By virtue of its ownership of HHF and control over the IHG Marketplace, IHG is an intended third-party beneficiary of the License Agreements.

57.     In connection with the License Agreements, HHF uses its superior bargaining power to coerce the franchisees into accepting onerous, unequal and unconscionable terms in its License Agreements.

58.     These onerous terms put immense financial stress and strain on franchisees, threatening their economic viability.

59.     HHF'S abuse of its position and unfair practices result in the imposition of needless and costly fees, above-market costs for necessary supplies and other goods and results in substantial impacts on franchisees' ability—who manage and operate their properties commensurate with the highest standards—to operate their properties profitably.

60.     Plaintiff 110 SUNPORT LLC  is an HHF Franchisee that entered into a franchise agreement with HHF dated March 8, 2019 entitled "Holiday Hospitality Franchising, LLC, Holiday Inn Express & Suites Hotel, Relicensing License  Agreement with 110 Sunport, L.L.C. Licensee" (the "License Agreement," a copy of which is attached hereto as **Exhibit A**) for a Holiday Inn Express & Suites Hotel to be renovated and operated by Plaintiff and located at 1921 Yale Boulevard SE in Albuquerque, New Mexico 87106.  (*See* License Agreement, §§ 1(A), 15(A).

61.     Pursuant to this License Agreement, Defendant HHF granted Plaintiff 110

Sunport, LLC, a non-exclusive license to use Defendant's System (as defined therein) only at the Hotel and in accordance with the License Agreement. (*See id.*, §§1(B), 2.)

**B.     Vendor Mandates and Kickbacks – the IHG Marketplace Programs**

62.     A particular manner by which IHG/HHF undermines the viability and profitability of its franchisees is by mandating Plaintiff 110 Sunport, LLC and similarly situated franchisees utilize only HHF approved third-party vendors, the purpose of which is for Defendants to reap a significant financial benefit at the direct expense and to the financial detriment of the franchisees.

63.     The rates for goods and services through the closed vendor system which franchisees of IGH/HHF are required to use are higher than market rates for the same goods and/or services and, as a result of use by its franchisees, IHG/HHF recieves financial kickbacks from the vendors in its closed system.

64.     IHG/HHF's fraudulent and unconscionable scheme cannot operate without franchisees paying excessive, above-market rates for the goods and services necessary to run a hotel, including, but not limited to:

a) its computerized credit card processing system, Secure Payment Solution ("SPS") which all Hotels are required to use;

b) high speed guest internet services, designated workstations and multi-function printers in Hotel business centers ("Public Access Computers"), and a designated communication service referred to as "SCH Merlin";

c) HHF's approved Keycard System;

d) televisions and in-room entertainment compatible with SCH Studio;

e) an alert system that enables employees to notify hotel management of an emergency ("Employee Safety Devices");

f) equipment, software, and services for property-level

technology and telecommunications systems;

g) equipment associated with the Defendants' gift card program;

h) mandated food and beverage programs;

i) furniture, furnishing, linens, food products, utensils, and goods for guests' consumption and

j) additional advertising materials, products, services, equipment or supplies, from which IHG/HHF profits.

65.     The above-market rate pricing charged by vendors and paid by Plaintiff 110 Sunport, LLC and similarly situated franchisees provides the money necessary for those vendors to pay IHG/HHF's unreasonable and unconscionable kickbacks.

66.     IHG/HHF knowingly and willfully engage in conduct that ensures Plaintiff 110 Sunport, LLC and similarly situated franchisees pay above-market prices for goods and services necessary in conjunction with operation of the hotels.

67.     IHG/HHF requires that Plaintiff 110 Sunport, LLC and similarly situated franchisees strictly comply with its requirements for the types of services and products that may be used, promoted or offered at the hotel, and comply with all of HHF's "standards and specifications for goods and services used in the operation of the Hotel and other reasonable requirements to protect the System and the hotel from unreliable sources of supply."  (*See generally* License Agreement.)

68.     If IHG/HHF requires Plaintiff 110 Sunport, LLC and similarly situated franchisees to purchase equipment, furnishings, supplies or other products for the hotels from a designated or approved supplier or service provider, whether pursuant to the License Agreement, Standards or any communication from HHF, then they must purchase the mandated product(s) from mandated vendors and cannot deviate from those vendor mandates without prior approval

from IHG/HHF.

69.     Defendants IHG and HHF run the closed vendor program under the guise of being voluntary and which they falsely represent as delivering value and lower cost purchasing opportunities to HHF franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.  Nothing could be further from the truth.

70.     Defendants refer to these procurement programs as the "IHG Marketplace." Defendant IHG describes the IHG Marketplace as:

> an easy-to-use ordering platform that allows owners to take advantage of the buying power of IHG for operational and service needs.  This not-for-profit platform is available to all IHG-branded hotels and gives access to globally negotiated contracts and optimal pricing from more than 200 suppliers and services, resulting in significant savings and value.[1]

71.     Defendant IHG further represents that the IHG Marketplace is "[d]esigned to cut costs and streamline the hotel procurement process, the program provides owners with solutions to achieve unparalleled cost savings and efficiency…Rebates and discounts are passed directly to you, you earned them, you keep them!"[2]

72.     In reality, however, the IHG Marketplace operates on a cost recovery basis with fees for both procurement and technical ordering transaction services included in the supplier invoiced price.

73.     HHF franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, purchase goods and services directly from suppliers and vendors at prices negotiated

---

[1]  https://development.ihg.com/en/americas/home/develop-a-hotel/support-for-owners (last visited July 13, 2021).

[2]   https://www.ihgmarketplace.net/marketplace/home.php (last visited July 13, 2021).

13

by HHF and/or IHG. HHF franchisees, including Plaintiff, are excluded from negotiations of prices for goods and services which they must purchase through the the IGH Marketplace.

74.     These prices are frequently above-market prices which do not permit the HHF franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to seek competitive pricing for their own benefit.

75.     These inflated prices allow for rebates that go to IHG and HHF directly by suppliers which generally range from approximately 1-5% of the amount of the invoice price for the goods and services purchased by franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

76.     These kickbacks to IHG and HHF are the primary—if not the sole—reason HHF franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, are forced to use expensive vendors and suppliers not of their own choosing at *supra*-competitive pricing.

77.     Some primary examples of the IHG Marketplace sourced vendor mandates involve credit card processing and high speed internet agreements, with IHG and HHF requiring franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to execute and bear the cost of these infrastructure related agreements.

78.     Although IHG/HHF represent that franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, have a choice between vendors, it is usually only between no more than two or three vendors hand-picked by Defendants from whom they obtain significant rebates.

79.     Although franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, are able to secure far more reasonable rates for, for example, credit card processing from alternate sources, IHG/HHF do *not* permit franchisees, including Plaintiff 110 Sunport, LLC

and similarly situated franchisees , to do so on the open market and instead require franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to pay the higher rates of Defendants' selected vendors.

80.     This is similarly true in the case of hotel internet services which IHG/HHF does *not* permit franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to purchase on the open market and instead requires franchisees, in most instances, to pay more than double the price for lower speeds than what franchisees could purchase independently from the same or alternate sources.

81.     Under onerous mandates, Defendants require franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to enroll in various services, including, but not limited to, grossly overpriced internet bandwidth services and marketing programs, such as IHG Ignite, without obtaining their consent and under the guise of brand standard requirements.

82.     For a supposed voluntary program, opting out of the IHG Ignite program is met with threats of property listing suppression and other negative online search consequences despite franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, contributing tens of thousands of dollars annually for marketing expenditures per hotel.

83.     This mandated lack of choice invariably increases franchisees' costs and expenses; yet, benefits only IHG/HHF in the form of financial kickbacks.

84.     The costs charged to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, in the IHG/HHF procurement programs such as the IHG Marketplace are almost always higher than if the same product or service were purchased by an independent hotel outside of the HHF System.

85.     Defendants frequently use the pretext that the vendor requirements imposed on

franchisees are necessary for standardization or—more curiously—for security.

86.     In fact, many products and services that HHF franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, are required to obtain based on Defendants' vendor mandates are of inferior quality despite the excessive cost.

**C.     Franchisee Fees & Property Improvement Plans**

87.     As a prerequisite to becoming an HHF Franchisee, IHG/HHF charges (and Plaintiff 110 Sunport, LLC and similarly situated franchisees  actually paid) an initial application fee of $500 per guest room (sometimes referred to as a "key") and up to $50,000 simply for the privilege of submitting an application for an HHF franchise or license.  This application fee applies for new development, conversion, change of ownership or re-licensing.

88.     Only then does IHG/HHF determine whether it will approve the application for a license, and in the case of unapproved applications, IHG/HHF retains $15,000 which is forfeited by franchise/license applicants for absolutely no return benefit.

89.     If IHG/HHF does approve an application, it still has the sole discretion to revoke its approval thereafter and to retain an applicant's entire application fee and to deem it "non-refundable," again providing applicants with no benefit in return for IHG/HHF taking an amount up to $50,000 and leaving applicants without recourse.

90.     IHG/HHF also maintains what it calls its "Property Improvement Plan" (the "PIP").

91.     Before any HHF franchisee submits an application for conversion, change of ownership, brand change or re-licensing, franchisees, including Plaintiff, must arrange for HHF to conduct an inspection of the subject hotel so that IHG/HHF can prepare written specifications for the upgrading, construction and furnishing of the hotel in accordance with HHF's "Standards."

16

92.     Under the PIP, HHF franchisees must pay a non-refundable $6,500 fee to have their Hotel inspected and for preparation of a PIP report.

93.     In the case of conversion hotels, IHG/HHF will not authorize reopening unless and until it has determined that all PIP requirements have been completed, including the submission of plans before the start of construction in accordance with the dates specified in the License Agreement.

94.     As part of PIP, IHG/HHF charges up to an additional $5,000 for each re-evaluation and re-inspection it may deem necessary in the event any hotel fails its opening inspection.  IHG/HHF frequently uses this, and imposes further fines, as a means to enrich themselves to the detriment of the franchisees.

95.     IHG/HHF neither requires nor imposes its inspections, re-inspections, re-evaluations and/or written reports in good faith.  To the contrary, IHG/HHF uses these inspections as a pretext to generate the aforesaid fees and fines, and prepares disingenuously negative reports in order to generate revenue for itself in the form of fines and unwarranted re-inspections, reports and impact studies, all intended to harm the economic viability and creditworthiness of its franchisees.

96.     IHG/HHF suggests to its quality inspectors to fail franchisees in quality evaluations if those franchisees' Medallia scores, customer and employee experience scores generated from surveys, social media and review websites, are below expectations, although Medallia scores are not to be taken into account in quality evaluations.

97.     Any objections by an IHG/HHF franchisee to this process are disregarded and dismissed, and met with derision, threats, intimidation and retaliation.

98.     The license that IHG/HHF grants to Plaintiff 110 Sunport, LLC and similarly

situated franchisees to "use the System only at the Hotel, but only in accordance with this License" (and during the License Term) defines the System broadly and with significant open-ended discretion for HHF.

99.     This discretion allows IHG/HHF to put a stranglehold on franchisees and to impose onerous costs and obligations on franchisees:

> The System is composed of all elements which are designed to identify Holiday Inn, Holiday Inn Express and Holiday Inn Resort branded hotels to the consuming public or are designed to be associated with those hotels or to contribute to such identification or association and all elements which identify or reflect the quality standards and business practices of such hotels, all as specified in this License or as designated from time to time by Licensor. The System at present includes, but is not limited to, the service marks Holiday Inn®, Holiday Inn Express®, Holiday Inn Express® & Suites, Holiday Inn® & Suites and Holiday Inn® Resort, (as appropriate to the specific hotel operation to which it pertains), Holidex® and the other Marks (as defined in paragraph 7.B below), and intellectual property rights made available to licensees of the System by reason of a license; all rights to domain names and other identifications or elements used in electronic commerce as may be designated from time to time by Licensor in accordance with Licensor's specifications to be part of the System; access to a reservation service operated in accordance with specifications established by Licensor from time to time; distribution of advertising, publicity and other marketing programs and materials; architectural drawings and architectural works; the furnishing of training programs and materials; confidential or proprietary information standards, *specifications and policies for construction, furnishing, operation, appearance and service of the Hotel*, and other requirements as stated or referred to in this License and from time to time in Licensor's brand standards for System hotels (the "Standards") or in other communications to Licensee; *and programs for inspecting the Hotel*, measuring and assessing service, quality and consumer opinion and consulting with Licensee. *Licensor may add elements to the System or modify, alter or delete elements of the System in its sole judgment from time to time*.

License Agreement, §1(B) (emphasis added).

100.     There is no limitation on the extent to which HHF can alter, modify or revise its "Standards" or impose costs and obligations on frachisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, which it does not disclose and have never been the subject of any arms' length agreement.  (*See id.*, §§1(B), 4(E), 5.)

101.     The IHG/HHF PIPs are designed with substandard products and designs, purposefully limit vendor choices for franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, and impose above-market procurement costs.

102.     For example, most furniture items that IHG/HHF require its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to purchase from required vendors are of such inferior quality that they break, disassemble and/or damage upon initial delivery and/or assembly and are rendered unusable or they have a limited use life and generally are substandard.

103.     IHG/HHF then forces additional costs upon its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to replace the mandated but damaged products, not to mention imposes additional costs to clean the resultant broken parts strewn and littered in the franchisees' hotels.

104.     Although the IHG Owners Association purports to "consider and discuss, and make recommendations relating to the operation" of franchisees' hotels, and "function in a manner consistent with the best interests of all persons using the System," IHG/HHF and the IHGOA routinely dismiss and disregard franchisee concerns about its inferior mandated products and exorbitant costs.  (*See* Franchise Agreement, §6(A)-(B).)

105.     IHG/HHF forces its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to repeat these PIP multimillion dollar projects every 6-8 years irrespective of the actual condition of hotels purely to generate additional fees and vendor

kickbacks for themselves to the detriment of its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

106.     As part of PIP, IHG/HHF deliberately scales back and manipulates standard manufacturer furniture warranties as another means purely to fit their PIP cycles, cause harm to the franchisees and, ultimately, raise prices for hotel customers.

107.     As such, IHG/HHF has imposed and continues to impose onerous PIP terms on franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, which, in the sole discretion of IHG/HHF, forces franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to spend approximately $10,000 – $30,000 *per guest room*, which amounts to millions of dollars in forced renovation costs being foisted upon franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

108.     HHF further does so under the constant threat of retaliation against its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, in the event of noncompliance as determined subjectively by HHF in its sole discretion, which can result in termination of their franchise or other punitive measures.

109.     IHG/HHF routinely assesses multiple fees against franchisees for the provision of various technology services.  Initially, franchisees were assessed a monthly $500 per property technology fee, which was later increased to $14.50 per room fee.  Then, when much needed technology upgrades were actually performed, the hotels were then assessed an additional fee based on the number of work stations a particular property had, which could amount to an additional $25,000 to $35,000.

**D.      IHG/HHF's Double-Dipping on Commissions & Introduction of Supposedly Voluntary Programs under Pressure & Retaliation for Opt-Outs**

110.     HHF franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, pay initial marketing contributions and annual marketing fees which are represented as being applied to such things as marketing.

111.     Not content with those fees, however, IHG/HHF frequently introduces "new programs" requiring franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to pay additional fees, all of which go directly to said Defendants.

112.     The fees set forth in the License Agreement are based on a fixed percentage of IHG/HHF franchisees' revenue.  (*See* License Agreement, §3(B).)

113.     The License Agreement, however, also purports to give IHG/HHF the unfettered, unilateral and unspecified ability to impose additional fees, penalties, rules and regulations, namely "all fees due for travel agent commission programs . . . ."  (*See id.* §3(B)(1)(d).)

114.     One such program for booking and commissions is known as the Global Distribution System ("GDS"), which is a worldwide conduit between travel bookers and suppliers, such as hotels and other accommodation providers.

115.     GDS communicates live product, price and availability data to travel agents and online booking engines and allows for automated transactions.

116.     The concept of GDS is for hotels to increase their reach to attract more customers, to increase revenue and ultimately to generate additional profits.

117.     A GDS passes on hotel inventory and rates to travel agents and travel sites that request it and also accepts reservations.

118.     Today, the databases also include online travel agencies ("OTA"s) (such as Booking.com and Expedia).

119.     IHG/HHF arbitrarily exercises this purported right to impose fees including, but not limited to, travel agent commission fees, in bad faith.

120.     IHG/HHF does so in order to capture a continually increasing share the revenue of its franchisees, including those revenues of Plaintiff 110 Sunport, LLC and similarly situated franchisees.

121.     Franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, are charged multiple additional fees such as transaction fees, booking fees, GDS fees and excess and additional commissions through marketing and other programs.

122.     One example is IHG/HHF's imposition of the BTI (Business Traveler International) program, under which IHG/HHF double-dips on its commissions by imposing an additional 2.5% commission on franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, over and above the aforesaid traditional GDS bookings and commissions.

123.     Another example is IHG/HHF's "double-dip" on commissions for the aforesaid third-party OTA bookings, from which IHG/HHF, upon information and belief, receive kickbacks in sums unknown to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, since IHG/HHF keep their contractual arrangements confidential while charging the franchisees multiple fees for the same products or services that IHG/HHF is already contractually obligated to perform.

124.     IHG/HHF have also allowed OTAs to share and misappropriate discounted booking codes with third party websites who impose substantial taxes, fees and costs on unsuspecting customers and, despite knowing that such misconduct is ongoing, IHG/HHF have failed to enjoin such misconduct on the part of OTAs to IHG/HHF's benefit and the substantial detriment of franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

125.    IHG/HHF also sends sales leads to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, though the origin of which is unknown to the franchisees, through its Meeting Broker program.

126.    These leads require franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to pay 3% commissions to IHG/HHF if they actualize and franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, are billed based on revenue speculated by IHG/HHF unless franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, report updated actual numbers.

127.    Franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, will frequently turn away these leads due to the fact that they have previously built their own relationships prior to the duplicate lead coming from Meeting Broker.

128.    For instance, if a particular franchisee has, through its own efforts, obtained dedicated bookings from a local business, IHG/HHF still requires that franchisee to input those bookings into Meeting Broker and thereby imposes a 3% commission despite having done nothing to procure that business.

129.    In short, IHG/HHF uses this tactic to charge additional commissions and to require that franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, prove the prior relationship thereby stealing sales leads and revenues developed by franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

130.    IHG/HHF further abuses its discretion by requiring franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to provide bank account information to the OTAs that IHG/HHF contracts with.

131.    These OTAs will then automatically debit franchisees, including Plaintiff 110

Sunport, LLC and similarly situated franchisees, accounts on a monthly basis for all reservations sent to a particular hotel.

132.    The onus thus falls on the franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to reconcile and to dispute commission charges for no-shows, cancellations or invalid credit cards, without any support from IHG/HHF.

133.    The result is that funds are taken from the franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, without recourse, the OTAs collect unearned commissions, IHG/HHF receive kickbacks leaving franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, damaged without recourse nor any franchisor support.

134.    IHG/HHF further abuses its position by introducing marketing programs and other programs solely to its General Manager and Director of Sales, bypassing the franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, entirely.

135.    These programs are represented as voluntary and consensual programs which the franchisees can, in theory, choose whether to participate or not.

136.    However, Plaintiff 110 Sunport, LLC and similarly situated franchisees do not have any direct access to the program information and can only gain access through IHG/HHF's General Manager or Sales Director, depriving Plaintiff 110 Sunport, LLC and similarly situated franchisees of any real choice or opt-out alternative.

137.    Additionally, such programs purportedly offered by IHG/HHF to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees , as optional truly are not optional: IHG/HHF accompanies the presented "option" with threats of retaliation including, but not limited to, being told that franchisees' hotels will be suppressed or removed from search engine results.

138.     Faced with threats of retaliatory action from Defendants that further undermine the franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, profitability and/or economic viability, the representation that franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, have any true choice is truly illusory.

139.     In short and in sum, IHG/HHF introduces new or "additional" programs solely as a basis to create additional revenue streams and profit to the detriment and cost of Plaintiff 110 Sunport, LLC and similarly situated franchisees.

**E.     IHG Rewards Program; Points Plus Cash**

140.     Defendants introduced, maintain and run an IHG Rewards Club Program by which hotel guests can earn points by staying at hotels within IHG's network, as well as by purchasing goods and services with IHG partner vendors, including Groupon, Grubhub and OpenTable, provided these services are purchased through an SCH channel.

141.     Points can also be earned for activities booked on the SCH Trip Extras page.  For IHG Rewards Club Premier Credit Card holders or IHG Rewards Club Traveler Credit Card holders, additional points can be earned at IHG/HHF properties worldwide and on purchases made.

142.     Defendants' actual management of this program, however, is yet another bad faith means by which IHG and HHF profit off the backs of and to the detriment of their franchisees.

143.     Participating members earn 10 reward points for every $1 spent.  When those points are earned from staying in the hotel of Plaintiff 110 Sunport, LLC and similarly situated franchisees that hotel serves as the point of origination for the points.

144.     In effect, when a customer redeems points to earn free hotel night(s), Plaintiff 110 Sunport, LLC and similarly situated franchisees does not receive payment (or, if they do, it is for a vastly insignificant amount and only when the overall occupancy of the hotel is below a specified

percentage).

145.     Specifically, if a franchisee hotel is at 96% occupancy, IHG/HHF reimburses the participating franchisee hotel for the average daily room for that particular night (which is less than the full room rate).

146.     However, if a franchisee hotel is at less than 96% occupancy, IHG/HHF only reimburses the participating franchisee hotels $30 for the value of products or services that redeemed points were applied to, retaining the remainder for themselves and leaving IHG/HHF franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to earn only a small fraction of such nightly room rates to their economic detriment.

147.     IHG/HHF also has a Points Plus Cash Program which it has never disclosed in its Franchise Disclosure Document ("FDD") or License Agreement.

148.     The Points Plus Cash Program operates such that if participating hotel guests do not have enough points to fully redeem a full night's stay at a hotel or they do not desire to pay local sales tax, they have the option to combine rewards points with cash.

149.     In this instance, the nightly hotel rate is lowered and all cash paid by the customer is retained by IHG/HHF and none goes to the HHF franchisee hotel.

150.     This practice violates the License Agreement which provides that direct revenue from hotel guests goes to the HHF franchisee while IHG/HHF should only be entitled to collect fees from franchisees as provided therein.

151.     There is no transparency by IHG/HHF regarding the IHG Rewards Club Hotel Rewards Program as franchisees have no access to financial information and data regarding all awards, redemptions or amounts reimbursed to any franchisee or collected, retained or funneled by or to IHG and/or HHF in conjunction with the IHG Rewards Club Hotel Rewards Program.

**F.     HHF's Fraudulent Representations Regarding the Nature of its Relationship with Approved Suppliers**

152.     Under the License Agreement, HHF requires that franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, purchase some or all of the products and services necessary (the "Mandatory Products and Services") to operate a hotel from vendors and suppliers of its own choosing (the "Approved Suppliers").

153.     HHF represents to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, that it will limit the number of Approved Suppliers for given products and services for the purposes of obtaining a group or volume discount and ensuring uniform quality and supply of those Mandatory Products and Services.

154.     However, upon information and belief, limiting the number of Approved Suppliers has very little to do with obtaining greater discounts or improving brand quality.

155.     Rather, upon information and belief, HHF limits the number of Approved Suppliers as part of a scheme to reduce competition within the HHF Franchise System, which in turn, allows HHF to extract larger kickbacks from vendors.

156.     HHF does not disclose to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, when it receives a kickback (or "rebate") or the amount of any such "rebate."

157.     The intended purpose and effect of HHF's kickback scheme is that Approved Suppliers charge above-market rates for their goods and services.

158.     HHF does not help franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, save time and money on their purchasing needs.

159.     Upon information and belief, HHF does not obtain group or volume discounts on

behalf of its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

160.    Moreover, HHF does not ensure adequate brand quality and supply; rather, HHF at times forces franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to purchase, often at inflated prices, inferior Mandatory Products and Services.

161.    HHF is not attempting to promote brand quality, but is constantly auctioning off the right to sell Mandatory Products and Services to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to the highest bidding vendors.

162.    HHF is leveraging its Franchise System to secure massive "rebates"—or financial kickbacks—from vendors.

163.    Upon information and belief, to be approved as an Approved Supplier and to gain access to  franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, HHF requires a *quid pro quo* in the form of such financial kickbacks.

164.    The kickbacks include *both* fixed fees paid by Approved Suppliers to HHF and transactional fees based on a percentage of Approved Suppliers' total sales to franchisees and their guests.

165.    The transactional fees are inextricably tied to the cost of the goods and services, meaning that as HHF's revenue from transactional fees increases as the cost of goods and services increases.

166.    HHF, therefore, has an inherent conflict of interest that it never discloses to franchisees.

167.    Upon information and belief, HHF's conflict of interest has led to abuse.

168.    Upon information and belief, HHF has placed its interests and financial gain, as

well as the interests of Approved Suppliers over those of its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

169.    Upon information and belief, HHF has conspired with manufacturers and distributors to increase cost of goods and services that are sold to its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

170.    Upon information and belief, HHF colludes with manufacturers and/or distributors to increase the wholesale price of products, which in turn, increases the retail prices Approved Suppliers must sell to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

171.    Upon information and belief, HHF effectively fixes the retail pricing of goods and services sold to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

172.    Upon information and belief, HHF knows that Approved Suppliers cannot sell goods and services to its franchisees at competitive prices.

173.    Upon information and belief, HHF knows that Approved Suppliers must increase the cost of goods and services to account for the increased wholesale costs and as well the fixed and transactional fees that must be paid to HHF.

174.    Upon information and belief, HHF knows that Approved Suppliers will pass these increased costs onto franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

175.    Upon information and belief, franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, ultimately are the ones harmed by HHF's price fixing and kickback scheme.

176.    While HHF purports to give franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, the right to, at HHF's discretion, purchase Mandatory Products and Services from vendors other than the Approved Suppliers, in practice HHF rarely, if ever, grants franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, permission to do so.

177.    Essentially, HHF offers franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, no meaningful choice in vendors.

178.    IHG/HHF misrepresents to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, and/or conceals the true nature of its relationship with Approved Suppliers, in order to lock them into the onerous License Agreements and to create excessive switching costs.

## G.    HHF's Imposition of Marketing Fees While Engaging in No Marketing

179.    The License Agreement requires franchisees to pay HHF various fees, for which HHF promises to provide certain services in return.  Among these required fees are marketing fees. (*See* License Agreement, §3(B)(1)(b), (d).)

180.    The License Agreement provides that HHF franchisees shall make monthly fee payments to HHF for:

> (b)    a "Services Contribution" equal to the percentage of Gross Rooms Revenue set forth in paragraph 15 below, to be used by Licensor for marketing, reservations, and other related activities which, in Licensor's sole business judgment as to the long-term interests of the System, support marketing, reservations and other related functions.
> …
> Licensor may, in its sole judgment, upon 30 days' prior notice, increase this Contribution by an amount not to exceed 1% of Gross Rooms Revenue and such increase shall be effective for a period no longer than 12 months …

> (d)    all fees … due in connection with mandatory marketing …
> and other systems and programs established by the Licensor, its
> parents, subsidiaries or its affiliated entities relating to the System.

(*Id.*, §3(B)(1)(b), (d).)

181.    The percentage of Gross Rooms Revenue that Plaintiff 110 Sunport, LLC and similarly situated franchisees pays to HHF as the Services Contribution referenced in Section 3 of the License Agreement is 3%.  (*See id.*, §15(a)(2).)

182.    Following the imposition of Covid-19 restrictions in or about March 2020, HHF ceased all marketing efforts and activities which the franchisees' "Services Contribution" is contractually represented as being paid to support, and said HHF marketing is the explicit benefit of the bargain which franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, are entitled to receive in exchange for their payment to IHG/HHF.

183.    In addition, IHG/HHF made a public statement that Medallia score requirements, customer and employee experience scores generated from surveys, social media and review websites, would be waived for the previous year but, nevertheless, sent violations to franchisees explaining that their scores had dropped too low and threatened to take away licenses.

184.    HHF has continuously required, demanded payment of and collected marketing fees from its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, despite providing no marketing services or programs for nearly a year.

**H.    IHG Owners Association: IHG/HHF Collusion with the IHGOA & its Illusory Provision of Franchisee Participation**

185.    The License Agreement provides for franchisee membership in the IHGOA, and states in relevant part that:

> The purposes of the IHG Owners Association will be to consider
> and discuss, and make recommendations on common problems
> relating to the operation of System Hotels.  Licensor will seek the

advice and counsel of the IHG Owners Association's Board of Directors or, subject to the approval of Licensor, such committees, directors or officers of the IHG Owners Association to which or to whom the IHG Owners Association Board of Directors may delegate such responsibilities.

(License Agreement, §6(A).)

186.   The License Agreement provides further that HHF "recogniz[es] that the IHG Owners Association must function in a manner consistent with the best interests of all persons using the System . . . ." (*Id*., § 6(B).)

187.   HHF represents to its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, that it makes a good faith effort to protect the best interests of its franchisees.

188.   Despite these representations, however, the IHGOA board members are essentially handpicked by IHG/HHF, and receive incentives in exchange for their loyalty and obedience to IHG/HHF's agenda and interests.

189.   While IHGOA's board members are nominally elected by all franchise owners, it is essentially impossible for dissenting voices to gain seats on the board.

190.   IHG/HHF controls the nominating process through the imposition of onerous and vague requirements for candidacy, which ensures that IHG/HHF can carefully select candidates and thus the elections to the IHGOA are noncompetitive.

191.   The collusion between the IHGOA and IHG/HHF is a fraudulent attempt to create the appearance of legitimacy to IHG/HHF's exploitative practices, as detailed herein.

192.   IHG/HHF scoffs at the stated purposes and functions of the Owners Association as set forth in the License Agreement, franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, only the illusory role of having a voice in the System, or discussing any

operational recommendations for common problems at the hotels, with IHG/HHF instead acting in complete disregard for "the best interests of *all persons* using the System."

193.    In short, IHG/HHF pursues only its own self interest to the detriment of its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

194.    The "committees, directors or officers of the IHG Owners Association" rarely include franchisees, but instead are populated by IHG and/or HHF employees in order to collude with said Defendants, utterly disregard genuine franchisee complaints and to instead implement, avoid accountability for and rubber stamp all matters decided unilaterally by and for these Defendants.

## I.    IHG/HHF's Racial Discrimination Against Indian-American & South Asian-American Franchisees

195.    In its relations with its franchises, IHG/HHF is hostile to and routinely discriminates in favor of white, black and Latino franchisees and against Indian-American and South Asian-American franchises, by offering preferential treatment to the former and engaging in derogatory and demeaning rhetoric and behavior and more strictly enforcing rules and regulations against the latter.

196.    IHG/HHF applies PIP enforcement, inspections and fines unjustly and unequally, with unduly harsh and unequal application against its franchisees of Indian-American and South Asian-American descent.

197.    IHG/HHF applies its discretionary brand "standards" unjustly and unequally, with unduly harsh and unequal application against its franchisees of Indian-American and South Asian-American descent.

198.    IHG/HHF applies its discretionary brand "standards" unjustly and unequally, with online manipulation of guest scores, reviews and ratings against its franchisees of Indian-American

33

and South Asian-American descent.

199.   IHG/HHF terminates franchises more frequently and arbitrarily against its franchisees of Indian-American and South Asian-American descent, and similarly denies the granting and transfer of franchises to Indian-Americans and South Asian-Americans.

200.   IHG/HHF executives often make racially derogatory comments to and about their Indian-American and South Asian-American franchisees.

## CLASS ACTION ALLEGATIONS

201.   Plaintiff 110 Sunport, LLC hereby incorporates paragraphs 1-200 of this Complaint as if stated fully herein

202.   Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiff 110 Sunport, LLC brings this action on behalf of itself and the Class ("Class") of similarly situated persons defined as:

> All United States residents (including persons and business entities) that operate or have operated a hotel pursuant to a License Agreement with Holiday Hospitality Franchising LLC in the State of New Mexico from January 1, 2014 through the date of Class Certification. Excluded from the Class are the officers, directors and employees of Defendants and their respective legal representatives, heirs, successors and assigns.

**A.     Rule 23(a) Requirements**

203.   **Numerosity**: Members of the Class are so numerous that their individual joinder is impractical. The precise identities, number and addresses of members of the Class are presently unknown to Plaintiff 110 Sunport, LLC but may and should be known with proper and full discovery of Defendants, third-parties and all relevant records and documents.

204.   Upon information and good faith belief, the Class has more than 40 members.

205.    All members of the Class assert claims for violation of the law as set forth herein.

206.    **Existence of Common Questions of Fact and Law**:  There is a well-defined commonality and community of interest in the questions of fact and law affecting the members of the Class.  Among other things, the common questions of fact and law include:

    a)  Whether and to what extent Defendants' practices, conduct and misrepresentations violate the covenant of good faith and fair dealing;

    b)  Whether and to what extent Defendants' practices, conduct and misrepresentations violate federal or state law;

    c)  Whether HHF breached terms of the License Agreements;

    d)  Whether and to what extent Defendants maintained a closed market vendor marketplace in order to derive illicit profits;

    e)  Whether the Class sustained injury as a result of HHF's breaches of the License Agreement;

    f)  Whether any of the provisions of the subject HHF License Agreements are void and/or unenforceable;

    g)  Whether Plaintiff 110 Sunport, LLC and similarly situated franchisees are entitled to recover compensatory, consequential, exemplary, treble, statutory or punitive damages based on Defendants' fraudulent, illegal, anticompetitive conduct or practices and/or otherwise;

    h)  Whether temporary and permanent injunctive relief is appropriate for all Class Members and

    i)  Whether Plaintiff 110 Sunport, LLC and similarly situated franchisees are entitled to an award of reasonable attorneys' fees, prejudgment interest and costs of suit.

207.    **Typicality**:  Plaintiff 110 Sunport, LLC is a member of the Class.  Plaintiff 110 Sunport LLC's claims have a common origin and share common bases with the Class Members.  They originate from the same illegal, fraudulent and confiscatory practices of Defendants, and Defendants have acted in the same or substantially similar way toward Plaintiff and all other Class

Members.  If brought and prosecuted individually, the claims of each Class Member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories and seek the same or substantially similar relief.

208.  **Adequacy**:  Plaintiff 110 Sunport LLC is an adequate representative of the Class because its interests do not conflict with the interests of the members of the Class they seek to represent.  Plaintiff 110 Sunport LLC has retained competent counsel and intends to prosecute this action vigorously.  Plaintiff 110 Sunport LLC's counsel will fairly and adequately protect the interests of the members of the Class.

**B.**     **Rule 23(b)(2) & (3) Requirements**

209.  This lawsuit may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because Plaintiff 110 Sunport, LLC and similarly situated franchisees, the Class Members, seek declaratory and injunctive relief, and all of the above requirements of numerosity, common questions of fact and law, typicality and adequacy are satisfied.  Moreover, Defendants have acted on grounds generally applicable to Plaintiff 110 Sunport, LLC and similarly situated franchisees, the Class as a whole, thereby making declaratory and/or injunctive relief proper and suitable remedies.

210.  This lawsuit may also be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to the Class predominate over the questions affecting only individual members of the Class, and a class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual class member may be disproportionate to the burden and expense of individual prosecution of complex and extensive litigation to address Defendants' conduct and practices.

211.  Additionally, effective redress for each and every class member against Defendants

may be limited or even impossible where serial, duplicate or concurrent litigation occurs arising from these disputes.  Even if individual class members could afford or justify the prosecution of their separate claims, such an approach would compound judicial inefficiencies and could lead to incongruous and conflicting judgments against Defendants.

## **COUNT I**

### **Breach of Contract**
### **(Against IHG/HHF)**

212.    Plaintiff 110 Sunport, LLC hereby incorporates paragraphs 1-211 of this Complaint as if stated fully herein.

213.    At all times relevant to this litigation, Defendant IHG/HHF possessed individual contractual relationships with each franchisee, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, through the License Agreements.

214.    By virtue of their ownership of IHG/HHF and control over the IHG Marketplace, IHG and HHF are intended third-party beneficiaries of the License Agreements.

215.    Beyond the written terms of the License Agreement IHG/HHF owe a duty of good faith and fair dealing to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, in relation to its performance under the License Agreement and any related agreements.

216.    HHF breached its obligations under the License Agreement by, *inter alia*:

   a) Without any limitation or stated parameters, to generally and arbitrarily alter, modify or revise its "Standards" or "System," in its sole judgment, as a bad faith means to impose undisclosed costs and obligations on franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, without any franchisee input, agreement or recourse;

b) Using its PIP program as a means to apply unfettered and open-ended discretion to extract otherwise undisclosed fees and fees not contracted for from franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, by mandating exorbitant construction and renovation mandates and costs upon franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees;

c) As part of the PIP program, forcing franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to pay non-refundable fees for mandatory hotel inspections and preparation of PIP report(s), without any franchisee consent or agreement and charging additional undisclosed fees for re-inspections and re-evaluations solely as HHF deems necessary and mandates, and to arbitrarily require such re-inspections and also impose fines solely as a means of enriching HHF;

d) Forcing franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to utilize only HHF's Approved Suppliers for the goods and services necessary to run the hotel(s) because such vendors and suppliers provide HHF with rebates and kickbacks;

e) Falsely representing that the Approved Suppliers in HHF's procurement programs, including, but not limited to, the "IHG Marketplace" allow for franchisee choice, and deliver value and lower cost purchasing opportunities to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, when, in fact, franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, are involuntarily forced to use these Approved Suppliers, charging franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, above-market rates, rates which are higher than the same Approved Suppliers charge hotel operators not within the HHF System, and often the Mandatory Products and Services forced upon franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees , are of inferior quality;

f) HHF represents to franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, that its limited number of Approved Suppliers is for the purpose of obtaining group or volume discounts or to ensure uniform quality and supply, when it is instead engaged in a scheme to

reduce competition within the HHF Franchise System and extract larger kickbacks from these vendors. HHF does not obtain group or volume discounts on behalf of its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees;

g) HHF leverages its Franchise System as a means to secure massive fees from vendors, granting approval to Approved Suppliers who gain access to HHF's franchisees as a quid pro quo for kickbacks in the form of both fixed fees and percentage-based transactional fees, enriching HHF from increased costs borne by franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, for the Mandatory Products and Services. HHF never discloses to its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, this inherent and abusive conflict of interest from its collusion with manufacturers and/or distributors to increase its own revenue on the backs of its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees;

h) Despite the fact that franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, pay initial and annual fees associated with marketing, HHF introduces additional undisclosed marketing (and other) programs and fees as a means to generate additional revenue for itself to the detriment of franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, and without any prior disclosure to or agreement of the franchisees;

i) HHF ceased and suspended all of its marketing efforts and activities during the time of the Covid pandemic, yet continues to charge franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, for services it is not providing;

j) Use the threat and imposition of retaliation and retribution against franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, who in any way dispute or raise questions about HHF's introduction of programs, fees or expenses forced on franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees , without any prior disclosure or agreement or against franchisees who, when presented with HHF programs falsely represented as optional, opt-out of same;

k)  Using its customer rewards program as a means to allow customers to redeem points earned at point-of-origin franchisee hotels for free hotel stays, depriving the franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, of this direct revenue, but then reimbursing franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, only a small percentage of the redeemed points (usually less than 30%) and retaining the remainder for itself and

l)  Maintaining an IHG Owners Association, represented as a means for franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to consider and discuss, and make recommendations on common problems relating to the operation of System Hotels which HHF will seek the advice of and to promote the best interests of all persons using the System but, in reality, this representation is false and illusory.  Franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, are afforded no voice, their recommendations are summarily disregarded and the Owners Association is populated almost entirely by IHG employees to serve the purpose of enriching IHG, HHF and SCH, avoiding accountability and imposing additional financial hardship on franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

217.   In its performance of the License Agreements, in addition to the misconduct set forth hereinabove IHG/HHF routinely violate the duty of good faith and fair dealing with franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, by, *inter alia*:

a)  Instead of using the collective bargaining power of its franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to negotiate discounted rates on products necessary to the operation of the hotels from Approved Suppliers, allowing – and effectively requiring – the Approved Suppliers to charge rates for Mandatory Products and Services well in excess of the market rate, by requiring the Approved Suppliers to pay large kickbacks ("rebates") to HHF in order to earn the privilege of doing business with franchisees;

b)  In negotiations with Approved Suppliers, prioritizing the size of the kickback an Approved Supplier is willing to pay HHF over the securing of a group discount or ensuring high quality

of Mandatory Products and Services;

c) Forcing franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to use a specific credit card processor, which charges higher fees and other chargebacks causing franchisees to lose significant monies;

d) Forcing franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to purchase other Mandatory Products and Services from Approved Suppliers, when the Mandatory Products and Services provided by certain Approved Suppliers are of low quality and priced above a fair market rate;

e) Unfairly and wrongfully penalizing franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, who "opt out" of allegedly voluntary programs;

f) Refusing to negotiate in good faith with franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, in the wake of the Covid-19 pandemic;

g) Otherwise imposing onerous and unnecessary fees, penalties and fines upon franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees  and

h) Otherwise acting to profit at the expense of the financial health of HHF franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees.

218.    Due to IHG/HHF's ongoing breaches of their express and implied contractual duties, franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, have suffered monetary damages.

## COUNT II

### Violations of New Mexico Unfair Prctices Act, NMSA 1978 §§ 57-12-1, *et seq.* (Against IHG/HHF)

219.    Plaintiff 110 Sunport, LLC hereby incorporates paragraphs 1-218 of this Complaint as if stated fully herein.

220.    The purpose of the New Mexico Unfair Practices Act, §§ 57-12-1, *et seq.*, is to

protect to provide a remedy for unfair, deceptive, or unconscionable trade practices.

221.    Plaintiff 110 Sunport, LLC and similarly situated franchisees are persons as defined by NMSA 1978, § 57-12-2(A).

222.    Plaintiff 110 Sunport, LLC and similarly situated franchisees  are, by the terms of their License Agreement, required to perform business within the State of New Mexico.

223.    Under the New Mexico Unfair Practices Act, NMSA 1978, § 57-12-3, "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful."

224.    In the regular course of its business, IHG/HHF knowingingly has made oral or written statements or other representations that are false and/or misleading in connection with the sale of the license pursuant to the licensee agreement.

225.    The false and/or misleading statements or representations by IHG/HHF are of the type that tends to, and in fact does, deceive or mislead any person.

226.    IHG/HHF has engaged in unfair or deceptive trade practices by, *inter alia*:

   a)    causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services by its requirement that Plaintiff 110 Sunport, LLC and similarly situated franchisees to pay above-market prices for necessary products from Qualified Vendors;

   b)    representing that goods or services have characteristics that they do not have by its requirement that Plaintiff 110 Sunport, LLC and similarly situated franchisees purchase necessary products fromqualified vendors that are inferior in quality to similar products offered by their competitors;

   c)    making false or misleadings statements concerning the price of goods or services by its requirement that Plaintiff 110 Sunport, LLC and similarly situated franchisees pay undisclosed fees and penalties to IHG/HHF, such that the total fees and penalties paid by each individual franchisee, including  Plaintiff  110  Sunport,  LLC  and  similarly

situated franchisees, could approach, equal or even exceed 20% of monthly revenue;

d)     stating that a transcation involves rights, remedies, or obligations that it does not by adding onerous rules to HHF's Rules and Regulations which bind Plaintiff 110 Sunport, LLC and similarly situated franchisees;

e)     causing confusion or misunderstanding as to affiliation, connection or association with another by forcing Plaintiff 110 Sunport, LLC and similarly situated franchisees to pay an "association fee" to IHGOA while actively working to undermine the efficacy of IHGOA as a purported representative of franchisees' interests and

f)     using exaggeration, innuendo, or ambiguity as to a material fact when doing so deceives or tends to deceive, thereby imposing monetary penalties against Plaintiff 110 Sunport, LLC and similarly situated franchisees for IHG/HHF's own mismanagement—for example, assessing penalties against franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, for guests' negative reviews of their hospitality experience, when those negative reviews stem from failures related IHG/HHF's reservation system.

227.    The licensing agreement is substantively and procedurally unconscionable.

228.    IHG/HHF has engaged in unconscionable trade practices that take advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff 110 Sunport, LLC and similarly situated franchises to a grossly unfair degree.

229.    As a direct and proximate result of IHG/HHf's actions, Plaintiff 110 Sunport, LLC and similarly situated franchisees have suffered actual damages in an amount to be determined at trial. Plaintiff 110 Sunport, LLC seeks an award of damages for three times the amount of actual damages suffered and respectfully request injunctive relief restraining IHG/HHF from continuing to perform acts in violation of the New Mexico Unfair Practices Act. Similarly situated franchisees seek an award of damages for the amount of actual damages suffered and respectfull request

43

injunctive relief restraining IHG/HHF from continuing to perform acts in violation of the New Mexico Unfair Practices Act. Plaintiff 110 Sunport, LLC and similarly situated franchisees also seek recovery of their attorney fees and costs.

## COUNT III

### Declaratory Judgment
### (Against IHG/HHF)

230.    Plaintiff 110 Sunport, LLC hereby incorporates paragraphs 1-229 of this Complaint as if stated fully herein.

231.    As a condition of receiving the benefits of operating a IHG/HHF franchise, IHG/HHF uses its vastly superior bargaining power to require all franchisees, including Plaintiff, to accept the grossly unequal terms of the License Agreements, which, as to many key provisions, is essentially a "take it or leave it" contract of adhesion.

232.    The following provisions of the License Agreement (hereafter "the Unconscionable Provisions") together and/or individually are substantively unconscionable:

> a)   HHF's open-ended right to impose mandates, fees and costs on franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees , by adding, modifying, altering or deleting elements of its System or its Standards in its sole judgment and discretion, which extends to (but is not limited to): marketing programs and materials; specifications and policies for construction; programs for inspecting the Hotel; and vague, arbitrary and amorphous "other requirements as stated or referred to in this License and from time to time in Licensor's brand standards for System Hotels" (defined as the "Standards"). (License Agreement, §1);

> b)   HHF's open-ended imposition upon Plaintiff as one of its responsibilities to "strictly comply in all respects with the Standards (as they may from time to time be modified or revised by [HHF]" which does no less than attempt to allow HHF to impose upon Plaintiff 110 Sunport, LLC and similarly situated franchisees , and demand compliance with

whatever it deems beyond any explicit contractual agreement. (*Id.*, §3(A)(5));

c) HHF's mandate that Plaintiff 110 Sunport, LLC and similarly situated franchisees ,strictly comply with its "standards and specifications for goods and services used in the operation of the Hotel and other reasonable requirements to protect the System and the Hotel from unreliable sources of supply," and with all HHF's requirements for services and products used in Hotels, which serves as a pretext for HHF's collusion and kickback scheme with vendors and suppliers. (*Id.*, §3(A)(7));

d) HHF's unlimited ability to maintain and alter its "Standards" imposed upon and required of franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees , with "wide latitude," and to modify or revise same at any time in its sole discretion and without franchisee knowledge or agreement. (*Id.*, §4(D)-(E));

e) HHF's illusory provision of a means by which franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees , can approve its changes in the Standards only through HHF's Franchise Committee, and by purporting to afford franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, a means to appeal such changes while at the same time severely restricting any appeal rights which cannot be "arbitrary, capricious or unreasonable" or not "for the purpose for which intended" vis-à-vis not only HHF changes in standards but also as to any other rights explicitly afforded by the agreement. (*Id.*, §5(A)-(D));

f) HHF's right to termination of the agreement for any violation thereof, when HHF has given itself the right to extra-contractually alter, modify or revise Plaintiffs' and the Class Members' obligations at any time and for any reason it may deem. (*Id.*, §§1(B), 12(B)-(C));

g) HHF's right to termination if Plaintiff and/or the Class Members "refuse[] to cooperate with" inspections or audits when, in fact, HHF charges Plaintiff 110 Sunport, LLC and similarly situated franchisees for all inspections and can impose them for any reason at any time as a means to impose costs and fines on Plaintiff 110 Sunport, LLC and similarly situated franchisees  merely as a tool to enrich itself. (*Id.*, §12(C)(13));

h) A provision providing for liquidated damages against franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, in the event of a franchisee's early termination of the License Agreement or HHF's termination of the License Agreement due to a franchisee's alleged breach, but not providing for liquidated damages against HHF under any circumstances. (*Id.*, §12(E));

i) Provisions prohibiting franchisees,' including Plaintiff's and the Class Members,' rights to pursue claims and damages against HHF for HHF's breaches of the parties' license agreement. (*Id.*, §§14(B)(3), 14(E), 14(H));

j) A requirement that franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees , broadly reimburse HHF, its affiliates, subsidiaries, officers, directors, agents, partners and employees, for any litigation regardless of which party initiates same. (*Id.*, §§14(J)) and

k) A provision requiring affirmative advisement of any trier of fact that HHF has rights to make changes to the parties' agreement "in the exercise of business judgment" and in every such instance those rights which are not explicitly contracted for are "adopted in good faith and is consistent with the long-term overall interests of the System," and further prohibits any and all judges, mediators, and/or triers of fact from applying their own judgment as opposed to HHF's. (*Id.*, §14(N)).

233.  The License Agreements are procedurally unconscionable because, at the inception of the License Agreements, IHG/HHF used its vastly superior bargaining position to require franchisees, including Plaintiff, to accept the grossly unequal Unconscionable Terms outlined above.

234.  Specifically, as to the Unconscionable Terms, the License Agreements are contracts of adhesion provided on a "take it or leave it" basis.

235.  The Unconscionable Terms are not subject to negotiation.

236.  IHG/HHF drafts the Agreements in their entirety.

237.  An actual, present, and justiciable controversy exists between Plaintiff and

46

IHG/HHF regarding the enforceability of the Unconscionable Provisions.

238.    Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff seek declaratory judgment from this Court that the Unconscionable Provisions listed above are unconscionable, illusory and/or unenforceable.

**COUNT IV**

**Violation of the Sherman Act, 15 U.S.C. § 1
and New Mexico Antitrust Act, NMSA 1978, §§ 57-1-1, *et seq*.
(Against IHG/HHF)**

239.    Plaintiff 110 Sunport, LLC hereby incorporates paragraphs 1-238 of this Complaint as if stated fully herein.

240.    There exists markets for ownership interests in hospitality franchises, in which IHG/HHF maintains substantial market power.

241.    A separate market exists for the related goods and services associated with the operations of hospitality franchises, including but not limited to services, software, physical furnishings, financial services, and food products (the "Mandatory Products and Services").

242.    IHG/HHF requires that franchisees purchase some or all of the Mandatory Products and Services from vendors of its own choosing (the "Approved Suppliers").

243.    In order to obtain IHG/HHF's approval to sell Mandatory Products and Services to franchisees, IHG/HHF requires Approved Suppliers to pay substantial kickbacks to IHG/HHF, which it refers to euphemistically as "rebates."

244.    Although IHG/HHF represents to franchisees, including Plaintiff, that, in limiting the number of Approved Suppliers from which franchisees, including Plaintiff, may purchase Mandatory Products and Services, it seeks only to obtain group discounts for franchises and/or ensure consistent quality and adequate supplies for the franchise brand, in reality IHG/HHF

chooses Approved Suppliers exclusively or primarily based upon how large a kickback those Approved Suppliers are willing to pay IHG/HHF.

245.    In actuality, the Mandatory Products and Services purchased from Approved Suppliers are often of inferior quality and sold at above-market prices, relative to similar products sold by other vendors.

246.    While IHG/HHF does purport to give franchisees, including Plaintiff, the right to, at HHF's discretion, purchase Mandatory Products and Services from vendors other than the Approved Suppliers, in practice IHG/HHF rarely, if ever, grants franchisees permission to do so.

247.    At the time they entered into the License Agreements, IHG/HHF concealed the nature of its relationship with Approved Supplier from franchisees, including Plaintiff, in order to lock them into the onerous Agreements and create excessive switching costs.

248.    IHG/HHF also creates excessive switching costs through imposing onerous termination terms on franchisees, including Plaintiff, such that upon termination or expiration of the License Agreement, they may be liable to pay (i) liquidated damages and (ii) all outstanding fees and penalties in full, which, by virtue of IHG/HHF's right under the License Agreements to unilaterally impose additional fees and penalties, may be sufficient to prevent franchisees from exercising their termination rights, locking them into the franchise system.

249.    At all times relevant, IHG/HHF had monopoly power, market power and/or economic power in the relevant Hospitality Franchise market, sufficient to force franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to purchase and to accept Mandatory Products and Services from Approved Suppliers.

250.    By reason of the terms of the License Agreements and the investments franchisees, including Plaintiff, have made in their franchises, coupled with the difficulties franchisees face in

leaving the franchise system, IHG/HHF has substantial power in the market for both Hospitality Franchises and the market for Mandatory Products and Services.

251.    IHG/HHF manipulated its economic power in the Hospitality Franchise market to coerce franchisees, including Plaintiff, to purchase Mandatory Products and Services solely from Approved Suppliers, through contractual provisions contained in the License Agreements, as well as exploitation of pre-contractual information deficiencies and post-contractual switching costs.

252.    Through these and other means, IHG/HHF can and does coerce franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to purchase nearly of the Mandatory Products and Services from Approved Suppliers.

253.    Through the exercise of IHG/HHF's economic power as alleged herein, IHG/HHF has conditioned the purchase by franchisees, including Plaintiff, of their franchises and their continued existence as franchises upon the purchase of Mandatory Products and Services from Approved Suppliers.

254.    As a direct and proximate result of IHG/HHF's anti-competitive tying activity, franchisees, including Plaintiff, have been injured by being forced to pay above-market rates for inferior Mandatory Products and Services.

255.    A substantial amount of interstate commerce in Mandatory Products and Services has been adversely affected by IHG/HHF's actions.

256.    These actions impose an unreasonably negative effect on competition in the marketplace, because IHG/HHF's policy of coercing and conditioning the purchase and operation of a franchise and on purchase by franchisees of Mandatory Products and Services from Approved Suppliers forecloses the ability of vendors unwilling to pay kickbacks to IHG/HHF from selling their Mandatory Products and Services to franchisees, including Plaintiff, even though the quality

of such Mandatory Products and Services is equal to if not better than the quality of what is supplied by Approved Suppliers.

257.    HHF's tie of purchases of its franchises, including Plaintiff, to purchase of Mandatory Products and Services from Approved Suppliers imposes an unreasonable restraint upon commerce and is therefore per se unlawful in violation of Section One of the Sherman Act, 15 U.S.C. § 1, and has caused damage to franchisees, including Plaintiff.

258.    Alternatively, if IHG/HHF's tying conduct is not *per se* unlawful, it is unlawful under the rule of reason, in that the anti-competitive consequences of IHG/HHF's conduct outweigh any pro-competitive effects thereof. Not only does HHF's conduct impose supra-competitive prices on franchisees, including Plaintiff, it impedes the ability of other vendors to engage in competition with Approved Suppliers to provide high quality Mandatory Products and Services at lower costs.

259.    Moreover, consumers are injured in that they are forced to indirectly pay the kickbacks and excessive prices for products charged to franchises by Approved Suppliers.

260.    There is no pro-business or efficiency justification for the kickbacks and supra-competitive pricing, nor does any legitimate business purpose require these practices.

## COUNT V

### Accounting
### (Against IHG/HHF)

261.    Plaintiff 110 Sunport, LLC hereby incorporates paragraphs 1-260 of this Complaint as if stated fully herein.

262.    IHG/HHF owed franchisees, including Plaintiff, express contractual duties not to charge fees which were not contractually proscribed but nevertheless charges direct and indirect

fees to Plaintiff which were not authorized by the License Agreements.

263.    IHG/HHF owes a duty to account for monies, including, but not limited to:

a)  An accounting of the rebates it has taken from Approved Suppliers;

b)  An accounting of all charges associated with the PIP program and all fees charged for Hotel inspections, re-inspections, evaluations, preparation of PIP reports and any and all fines;

c)  An accounting of all awards, redemptions, amounts reimbursed to any franchisee, including Plaintiff 110 Sunport, LLC and similarly situated franchisees, to HHF, SCH and IHG associated with the IHG Rewards Club Hotel Rewards Program;

d)  An accounting of any and all IHG Marketplace programs;

e)  An accounting of the Secure Payment Solution credit card processing system;

f)  An accounting of all internet services and the SCH Merlin communication service;

g)  An accounting of HHF's Keycard System;

h)  An accounting of all in-room entertainment, SCH Studio, Employee Safety Devices, reservation and all other equipment, software, and services for property-level technology and telecommunications;

i)  An accounting of the gift card program;

j)  An accounting of all mandated food and beverage programs;

k)  An accounting of all furniture, furnishings, linens, food products, utensils and goods for guests and

l)  An accounting of its use of all other fees and penalties imposed upon franchisees, including Plaintiff 110 Sunport, LLC and similarly situated franchisees .

264.   Upon information and good faith belief, a request for such an accounting from

IHG/HHF would be futile.

265.   Plaintiff 110 Sunport, LLC and similarly situated franchisees, are unable to determine the amounts due to them without an accounting and there is no adequate remedy at law without such an accounting or such legal remedies would be difficult, inadequate or incomplete.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff 110 SUNPORT LLC, on behalf of itself and all those similarly situated, respectfully requests that this Honorable Court:

A.   Enter an order certifying this case as a class action on behalf of the Class defined herein;

B.   Enter an order against HHF and IHG in favor of Plaintiff for consequential and/or compensatory damages in an amount to be proven at trial and specific performance of the License Agreements;

C.   Enter an order against HHF and IHG in favor of Plaintiff for actual damages and treble damages and reasonable attorney's fees arising out of IHG/HHF's violations of the Sherman Act;

D.   Enter a permanent injunction prohibiting IHG/HHF's unlawful tying conduct;

E.   Declare that the provisions of the Agreements, as specified above, are unconscionable, illusory and/or unenforceable against Plaintiff;

F.   Enter an order against IHG/HHF in favor of Plaintiff entitling Plaintiff to an accounting of all fees paid by them to IHG and HHF, and all rebate payments made to HHF and IHG by Approved Suppliers and

G.   Award such other relief as this Court deems necessary and appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues properly so tried.

Dated: August 26, 2021

Respectfully submitted,

**EGOLF + FERLIC +
MARTINEZ + HARWOOD, LLC**

/s/ Kristina Martinez
Kristina Martinez
123 W. San Francisco St., Second Floor
Santa Fe, New Mexico 87501
(505) 986-9641
KMartinez@Egolflaw.com

Justin M. Klein (*pro hac vice* forthcoming)
**Marks & Klein, LLP**
63 Riverside Avenue
Red Bank, New Jersey 07701
T: (732) 747-7100
F: (732) 219-0625
justin@marksklein.com

Andrew P. Bleiman (*pro hac vice*
forthcoming)
Mark Fishbein (*pro hac vice* forthcoming)
**Marks & Klein, LLP**
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
T: (312) 206-5162
F: (732) 219-0625
andrew@marksklein.com
mark@ marksklein.com

Justin E. Proper
**WHITE AND WILLIAMS LLP**
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, Pennsylvania 19103-7395
Phone: 215.864.7165
properj@whiteandwilliams.com

*Attorneys for Plaintiff & the Class*